UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **INSERRA SUPERMARKETS, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**THE STOP & SHOP SUPERMARKET CO., LLC, ABC CORPORATIONS 1-10, AND JOHN DOES 1-10**<br><br>Defendants. | Docket No.: 16-01697<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiff Inserra Supermarkets, Inc. ("Inserra") brings eight federal and state antitrust and tort claims against The Stop & Shop Supermarket, Co. ("the Defendant"). The First Amended Complaint ("FAC") alleges that Defendant acted for anticompetitive reasons to prevent Inserra from opening a Shop-Rite adjacent to Defendant's existing supermarket in Wyckoff, New Jersey. Defendant now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the action for failure to state a claim. Defendant's motion to dismiss is **DENIED**.

### I. BACKGROUND

#### A. Inserra's Land-Use Applications – Administrative Proceedings

      In 2009, Inserra leased 7.4 acres of land in Wyckoff, New Jersey, intending to open a full-service Shop-Rite supermarket. FAC ¶¶ 40, 45. The Property is located adjacent to Defendant's Stop & Shop, which Inserra alleges is the only full-service supermarket in Wyckoff. *Id.* at ¶ 243. Inserra applied for land-use approval with the Wyckoff Planning Board (the "Wyckoff Board") in September 2009, and later with the Bergen County Planning Board (the "County Board") in June 2011. *Id* at ¶ 65. Defendant was entitled as a member of the public to formally object to Inserra's applications in public hearings.

According to the Complaint, Defendant abused the approval process by filing dozens of "obstructionist, anti-competitive [objections]," resulting in "39 hearings over nearly three years." *Id.* at ¶¶ 79, 214.[1] Defendant objected, for example, that the zoning category "retail food stores" did not include supermarkets, *id.* at ¶¶ 76, 233; that Inserra's plan did not accommodate certain large tractor trailers *id.* at ¶ 83(d); that the store would increase traffic and require installation of a new traffic light, *id.* at ¶ 83(e); and that Wyckoff's Zoning Ordinance required a 100-foot setback from what Defendant characterizes as "residential property." *Id.* at ¶ 8(f). Inserra argues that, in addition to the sheer volume of objections, the manner in which many objections were filed indicated that Defendant intended to prolong and complicate the approval process. Defendant, for example, repeatedly requested adjournments, *id.* at 116, and often waited until "the last minute" to raise objections, "so as to inflict maximum delay on the application process." *Id.* at ¶ 238. According to Inserra, Defendant presented expert testimony that the Wyckoff Board recognized to be inaccurate, inciting additional questioning and cross-examination. *Id.* at ¶ 83(a).

Inserra alleges that Defendant acted in concert with Munico, LLC,[2] landlord of Defendant's Wyckoff property and Defendant's collaborator on other existing and prospective projects. *Id.* at ¶ 71. Defendant allegedly "utilized existing lease relationships at the Wyckoff Location and at other properties controlled by Munico's principals, and the potential future relationships on other projects, to pressure and/or coerce and/or induce Munico to object to the Application." FAC. ¶ 72. Defendant and Munico entered an initial appearance at the Wyckoff proceeding using joint counsel, but Munico obtained its own counsel thereafter. *Id.* at ¶¶ 78; 82(b).

The Wyckoff Board finally approved Inserra's application on February 13, 2013, and the County Board's approval followed on April 8, 2014. *Id.* at ¶ 113. Defendant appealed the County's decision to Board of Chosen Freeholders ("Freeholders"), which affirmed the approval after *de novo* review in August 2014.

### B. State Litigation Challenging the Approval of Inserra's Land-Use Applications

On April 1, 2013, Defendant and Munico filed separate complaints in New Jersey Superior Court challenging the Wyckoff Board's approval of Inserra's application. FAC ¶ 131. Both actions were filed as "complaints in lieu of prerogative writs," accelerated proceedings used to challenge a governmental or quasi-governmental decision. *See* N.J.S.A. Const. Art. 6, § 5, ¶ 4; *Willoughby v. Planning Bd. Of Tp. Of Deptford*, 703 A.2d 668, 671 (N.J. App. Div. 1997). Defendant filed a similar action challenging the County Board's approval in October 2014. In August 2014, Defendant sued Bergan County under

---

[1] By comparison, Plaintiff notes that proceedings 2006 for Defendant's land-use application on an adjacent plot required only two hearings. FAC ¶ 64.

[2] Munico was originally named as a co-Defendant but was dismissed by way of stipulation on May 11, 2016. ECF Nos. 4, 6.

New Jersey's Open Public Records Act ("OPRA"), alleging that documents regarding Inserra's application had been withheld improperly. *Id.* at ¶ 158. Ultimately, all four complaints were dismissed or decided in Inserra's favor, and all were appealed. On August 18, 2016, the Appellate Division affirmed the decision upholding the Wyckoff Board's grant of approval. Defendant's two actions against the County remain pending before the Appellate Division. Munico withdrew its appeal.

### C. The Instant Action

Inserra filed this action on March 28, 2016, alleging that Defendant executed a "corporate policy of filing anticompetitive sham petitions . . . [which were] more interested in delay[ing] than in redressing any particular grievances." FAC ¶ 16.  Count I alleges that Defendant conspired with Munico to restrain trade in violation of Section 1 of the Sherman Act. Count II alleges that Defendant violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by monopolizing or attempting to monopolize the market for full-service supermarkets in the Greater Wyckoff Area. FAC ¶ 259. Counts III and IV state claims under corresponding provisions of the New Jersey Antitrust Act. N.J.S.A. 56:9-3; 56:9-4. Counts V-VIII allege tortious interference by contract, interference with prospective economic advantage, civil conspiracy, and malicious use of process. Defendant moves under § 12(b)(6) to dismiss the Complaint in its entirety.

## II. DISCUSSION

Defendant makes six arguments for dismissing the Complaint. First, the Sherman Act's statute of limitations bars the two federal antitrust claims. Second, Inserra does not plausibly allege "concerted action" by Defendant and Munico, as required by the Act. Third, Inserra fails to state a claim for monopolization or attempted monopolization under the Act because it does not plausibly allege a "dangerous probability" that Defendant had or will have monopoly power. Fourth, Defendant is immune from liability under the *Noerr-Pennington* doctrine. Fifth, New Jersey's "entire controversy" doctrine prohibits this Court from reviewing state claims that could have been asserted in a prior state court litigation. Lastly, Inserra does not plausibly allege "special grievances" required to state a claim for malicious use of process.  For the reasons explained below, all of these arguments fail.

### 1. Statute of Limitations

Claims under the Sherman Act must be brought within four years of the alleged antitrust violation. 15 U.S.C. § 15b. *See W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 105 (3d Cir. 2010). Inserra filed this action on March 28, 2016, rendering untimely any action that accrued before March 28, 2012. Defendant argues that Inserra's claims accrued in 2010, when Defendant and Munico allegedly conspired to impede the Wyckoff Board proceedings. Inserra concedes that the initial agreement between Defendant and Munico took place in July 2010, and that most Wyckoff Board hearings occurred before the limitations period.

Defendant, however, misconstrues the Sherman Act's limitations provision. "In the context of a continuing conspiracy to violate the antitrust laws . . . each time a plaintiff is injured by an act of the defendants a cause of action accrues [] to recover the damages caused by that act and . . . as to those damages, the statute of limitations runs from the commission of the act." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 106 (3d Cir. 2010). Further, a claim alleging conspiracy is not untimely merely because "the acts that occurred within the limitations period were reaffirmations of decisions originally made outside the limitations period." *Id.* at 106.

Viewing the facts in the light most favorable to Inserra, the Complaint plausibly alleges that Defendant's practice of sham petitioning "inflicted continuing and accumulating harm" during the limitations period. *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1172 (3d Cir. 1993) (citing *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 502 n. 15 (1968)). Defendant filed all four of its state court actions during the limitations period. Many Wyckoff Board hearings occurred within the limitations period. According to Inserra, some or all of these hearings were caused by Defendant's sham objections. Each hearing visited further harm upon Inserra, which pays $100,000 in monthly rent and which has refrained from developing the Property given the pending litigation.

In sum, although the initial agreement between Defendant and Munico occurred outside the limitations period, the post-limitations injuries were not merely "inertial consequences" of that original agreement. *George, Inc. v. Envirotech Corp.*, 939 F.2d 1271, 1274 (5th Cir. 1991). Rather, Defendant filed additional sham petitions during the limitations period, manifesting "an active, injurious conspiracy" that continued to inflict anticompetitive harm. *See In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1173 (3d Cir. 1993). *West Penn Allegheny Health Sys., Inc.*, 627 at 106. Inserra's action is timely.

### 2. Concerted Action

Count 1 alleges that Defendant violated Section § 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring with Munico to restrain competition in the market for full-service supermarkets in Wyckoff. FAC ¶ 243. To state a claim for conspiracy to restrain trade, Inserra must allege that Defendant and Munico engaged in "concerted action." *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005). According to Defendant, the Complaint does not include facts plausibly alleging that Defendant and Munico acted in concert to impede Inserra's development of a Shop-Rite in Wyckoff. The Defendant is wrong; Inserra has adequately pleaded concerted action.

A plaintiff must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *In re Ins. Brokerage Antitrust Litig.*,

618 F.3d 300, 324 (3d Cir. 2010). *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010). ("A plaintiff may plead an agreement by alleging direct or circumstantial evidence, or a combination of the two."). "An agreement exists when there is a unity of purpose, a common design and understanding, a meeting of the minds, or a conscious commitment to a common scheme." *W. Penn Allegheny Health Sys., Inc.*, 627 F.3d at 99 (citations omitted).

Inserra has adequately pleaded concerted action. The Complaint states that "representatives of Munico admitted to several representatives of Inserra . . . that Defendant [] had exerted pressure on Munico by virtue of its relationship with Munico and Munico's principals," by implying it (Defendant) would not "becom[e] involved in future projects." FAC ¶ 71. According to the Complaint, "Munico agreed to object to the Application and challenge the Application before the [Wyckoff Board]." *Id*. It is not disputed that Munico and Defendant maintain an ongoing business relationship, particularly as to Munico's lease of property to Defendant for its "existing stores in Sparta, New Jersey and Wayne, Jersey." *Id.* at ¶ 35. Defendant and Munico were initially represented at the Wyckoff Board proceedings by joint counsel. *Id.* at ¶¶ 78, 82. Munico later hired its own counsel, and both parties proceeded to raise various objections to Inserra's application. Munico and Defendant then filed civil complaints on April 1, 2013, the final day on which the Wyckoff Board decision could be challenged under New Jersey law. *Id.* at ¶¶ 131, 142. Together, these facts are "'enough facts to raise a reasonable expectation that discovery will reveal' evidence of illegal agreement." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 324 (3d Cir. 2010), citing *Twombly*, 550 U.S. at 556.[3]

### 3. Market Power

Count II alleges that Defendant monopolized or attempted to monopolize the market for full-service supermarkets in Wyckoff, thus violating § 2 of the Sherman Act. 15 U.S.C. § 2. *See* FAC ¶ 254. A claim under § 2 requires, *inter alia,* a "dangerous probability of [Defendant] achieving monopoly power." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 317 (3d Cir. 2007) (citations omitted). "Monopoly power" is "power to control prices or to exclude competition." *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98 (3d Cir. 1992). Whether there is a "dangerous probability" of Defendant obtaining monopoly power depends on several factors: Defendant's market share, its anticompetitive practices, general barriers to entry, strength of competition, probable development of the industry, and the elasticity of consumer demand. *Broadcom Corp.*,

---

[3] In addition, Defendant argues that since Munico (Defendant's landlord) does not compete in the supermarket industry, so a conspiracy between the two "defies logic." Reply Br. at 14. The Court does not agree. *See Acme Markets, Inc. v. Wharton Hardware and Supply Corp.*, 890 F.Supp. 1230 (D.N.J. 1995) (denying summary judgment of Sherman Act Section One violation by commercial landlord and tenant grocery store).

5

501 F.3d at 318. No single factor is determinative. *Id.* at 19. ("[D]etermining whether a defendant has a 'dangerous probability' of successful monopolization is a fact-sensitive inquiry, in which market share is simply one factor.").

Although Inserra does not attempt to quantify Defendant's market share, the weight of other *Broadcom* factors creates a "dangerous probability" that Defendant has or will monopolize full-service supermarkets in Wyckoff. The Complaint states that Defendant "is the only full service supermarket currently operating Wyckoff, New Jersey." FAC ¶ 7. Viewing the Complaint in the light most favorable to Inserra, Defendant's "anticompetitive practices" include railroading potential competitors by abusing the legal process. *Id.* at ¶ 63. Inserra alleges that full-service supermarkets face extremely high barriers to entry: they require a large piece of land near a major population center, a vast inventory of diverse goods, adequate space for parking and pedestrian traffic, and—as this case vividly illustrates—Inserra must comply with local zoning ordinances and navigate local politics. *Id* at ¶ 59-60. As for cross-elasticity of demand, it is plausible that introducing a second full-service supermarket in Wyckoff would pressure Defendant to lower prices, particularly if—as the Complaint alleges—consumers greatly value the convenience of shopping locally. ¶¶ 55, 61-62. Even absent quantified market share, these facts plausibly allege that monopolization is a "dangerous probability." *See Broadcom Corp.*, 501 F.3d 297, 318 (3d Cir. 2007) (quoting *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 877 (3d Cir. 1995)).

Defendant also argues that Inserra fails to identify the "contours of [the] geographic market" over which Defendant exercises monopoly power. Def. Memo, at ¶ 33. This argument fails in light of *Hanover 3201 Realty, LLC v. Village. Supermarkets, Inc*. 806 F.3d 162 (3d Cir. 2015), where the Third Circuit found it "plausible that greater Morristown, which includes Morristown and its neighboring communities, is a distinct geographic market" for purposes of the Sherman Act. *See* 806 F.3d at 183-84. Here, Inserra describes the relevant market as "the Township of Wyckoff and/or the immediately surrounding Greater Wyckoff area . . ." FAC ¶ 243. Under *Hanover*, this description suffices.

### 4. *Noerr-Pennington* Immunity

Alternatively, Defendant argues that the entire Complaint must be dismissed because the First Amendment immunizes "petitioning activity" from civil liability. The *Noerr-Pennington* doctrine "safeguards the First Amendment right to 'petition the government for a redress of grievances' . . . by immunizing citizens from the liability that may attend the exercise of that right." *Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27*, 728 F.3d 354, 362 (4th Cir. 2013) (citation omitted). *See* U.S. Const. amend. I. As the Third Circuit has observed, however, *Noerr-Pennington* does not protect "petitioning activity [that] is a 'mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships

of a competitor.'" *Hanover 3201 Realty, LLC*, 806 F.3d at 180 (citing *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961)). The Court finds that Defendant's conduct falls within the "sham exception" to *Noerr-Pennington* immunity.

When a party has filed "a whole series of lawsuits and other legal actions," the appropriate question is whether they were filed "without regard to merit and for the purpose of using the governmental process . . . to harm a market rival and restrain trade." *Hanover 3201 Realty, LLC*, 806 F.3d at 180. (citing *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)).[4] The Court undertakes a "holistic review that may include [] the defendant's filing success—i.e., win-loss percentage—as circumstantial evidence of the defendant's subjective motivations." *Id.* at 180-81. The Court considers any other "evidence of bad-faith," as well as "the magnitude and nature of the collateral harm imposed on plaintiffs by defendants' petitioning activity." *Hanover*, 806 F.3d at 181 (citing *Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27*, 728 F.3d 354, 365 (4th Cir.2013)).

Inserra has pleaded facts that, if true, plausibly allege that Defendant "misused government process to curtail competition . . . and to obstruct [Inserra] from obtaining all necessary government approval." *Hanover*, 806 F.3d at 180. Despite an array of diverse legal arguments, Defendant lost all three of its regulatory proceedings—though it succeeded in prolonging them dramatically. All three of Defendant's civil actions were unsuccessful, though it continues to pursue them doggedly on appeal.[5] Munico, allegedly acting in concert with Defendant, also lost its administrative and legal challenges. Defendant made a great number of objections, often at the "last minute." FAC ¶ 82. Defendant requested additional time to prepare for the Freeholders meeting, then did not attend. FAC ¶ 177.  Lastly, the presence of "collateral harm" is clear: Inserra continues to pay $100,000 per month in rent, and has not begun developing the property given the specter of litigation over its land-use approval. *Noerr-Pennington* offers no protection for Defendant.  Viewed in the light most favorable to Inserra, the Complaint plausibly alleges that Defendant's "petitions" were anticompetitive practices, not exercises of free speech.

5. **Entire Controversy Doctrine**

Counts III and IV allege New Jersey antitrust claims analogous to Inserra's Sherman Act claims. Counts V through VIII allege tort claims under state law. [6]

---

[4] The Court rejects Defendant's attempts to frame these events as comprising a "single proceeding," requiring analysis under *Prof'l Real Estate Inv' rs v. Columbia Pictures Indus., In.*, 508 U.S. 49, 63 (1993). There are many distinct "data points" in this case.
[5] Inserra was not named as a defendant in the Bergan County OPRA litigation, but that action is clearly related to Inserra's land-use application.
[6] Inserra's tort claims, Counts V-VIII, are tortious interference with contract, interference with

Defendant argues that all of Inserra's state claims should be dismissed pursuant to the entire controversy doctrine ("the Doctrine"), a state version of *res judicata* requiring that "all aspects of a legal dispute occur in a single lawsuit." *Olds v. Donnelly*, 696 A.2d 633, 639 (N.J. 1997); N.J.S.A. 4:30A. Defendant argues that since the claims accrued during the administrative process, they should have been presented as compulsory counterclaims during subsequent litigation that challenged the approval of Inserra's application in state court.

The Court declines to apply the entire controversy doctrine in this case. To begin with, Counts III – VII are claims arising from both the administrative hearings *and* the subsequent litigations. Claims arising from conduct during litigation are not subject to preclusion as a result of having not been raised as compulsory counterclaims in that same litigation. *See Wadeer v. New Jersey Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015) (No preclusion without a "fair and reasonable opportunity to have fully litigated the claim in the original action."). *Cf. Olds v. Donnelly*, 696 A.2d 633, 639 (N.J. 1997) (holding that alleged malpractice could not be considered a compulsory counterclaim in underlying action giving rise to the claim).

The policies underlying the Doctrine—finality, judicial economy and (most importantly) fairness—weigh against its application against any of Inserra's state claims. *See K-Land Corp. No. 28 v. Landis Sewerage Auth.*, 800 A.2d 861, 871 (N.J. 2002). Once again reading the facts in Inserra's favor, the Law Division litigations had the effect of delaying Inserra's development of the property. Meanwhile, Inserra continued to pay $100,000 in rent each month. To require that Inserra expand the scope of what it perceived as bad-faith litigation, by filing counterclaims based on Defendant's prior administrative objections, would be unfair. Further, as Inserra argues, federal court is the best way to avoid fragmentation and promote judicial economy in this case. *See McNeill v. Zoref*, 687 A.2d 1052, 1057 (App. Div. 1997).

### 6. Malicious Use of Process – "Special Grievances"

Count Eight alleges malicious use of process, the civil analog of malicious prosecution. *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022-23 (N.J. 2009). Malicious use of process requires proof of "special grievance," something more than "the minimal impact of the commencement of civil litigation," *id.* at 1023, such as "interference . . . with personal liberty or property. *Penwag Property Co., Inc. v. Landau*, 372 A.2d 1162, 1165-66 (N.J. Super. Ct. App. Div. 1997) (citing Restatement (Third), Torts § 677 (1938)). Defendant argues that Inserra fails to state a claim for malicious use of process because it does not allege special grievances. The Court disagrees.

Although Inserra's opposition brief did not address this issue, the Complaint on its face plausibly alleges special grievances. Inserra executed a lease in 2009 for the sole

---

prospective economic advantage, civil conspiracy, and malicious use of process.

purpose of developing a full-service Shop-Rite supermarket. By initiating a barrage of administrative and judicial challenges in concert with Munico, Defendant prevented Inserra from developing the property for its intended purpose. *See Component Hardware Grp. V. Trine Rolled Moulding Corp.*, 2007 WL 2177667 at *6 (D.N.J. July 27, 2007) ("A special grievance 'consists of . . . wrongful interference with possession or enjoyment of property." citing *Klesh v. Coddington*, 295 N.J. Super. 51, 59 (Law Div. 1996)).  By allegedly railroading the hearings and initiating frivolous litigation, Defendant impeded Inserra's access to legal process and prevented it from fully realizing its property rights. Inserra adequately pleaded special grievances.

### III.    CONCLUSION

For the reasons foregoing, Defendant's motion to dismiss is **DENIED**.


**February 28, 2017**


_____/s/ William J. Martini_____
**WILLIAM J. MARTINI, U.S.D.J.**

9